UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
FREDERICK WALKER,

              *Plaintiff*,

v.

COUNTY OF NASSAU, *et al.*,

              *Defendants*.
-----------------------------X

<u>Memorandum and Order</u>

15-CV-4794(KAM)(ST)

**KIYO A. MATSUMOTO, United States District Judge:**

      This civil rights lawsuit alleges deliberate
indifference to a pre-trial detainee's medical needs.  The
multiple defendants have moved for summary judgment pursuant to
Federal Rule of Civil Procedure 56.  (ECF No. 99.)  For the
reasons herein, the motions for summary judgment are GRANTED.

<u>Background</u>

      The *pro se* plaintiff, Frederick Walker ("Mr. Walker"
or "Plaintiff"), initiated this action on August 6, 2015.  (ECF
No. 15, Complaint.)  The case was originally assigned to the
Honorable Joseph F. Bianco, and subsequently reassigned to the
undersigned.  Mr. Walker alleged that his rights under the
United States Constitution pursuant to the Eighth and Fourteenth
Amendments were violated while he was a pre-trial detainee at
the Nassau County Correctional Center in East Meadow, New York.
(*Id.* at 4.)  Mr. Walker, who suffered a gunshot wound in 1988
that subsequently caused significant complications, alleged that

while he was detained, he was denied the use of a cane for eleven months, denied additional (or different) pain medication, denied a second mattress to sleep on, and denied a referral to a specialist doctor. (*Id.* at 9.) The named defendants in this action are: the County of Nassau and the former sheriff of the Nassau County Correctional Center, Michael Sposato (the "County Defendants"); and Armor Correctional Health Services of New York ("Armor") and its employees, Dr. Jose Armas, Dr. Childa Margos, and Dr. Carl-Henri Sanchez (the "Armor Defendants").

On July 6, 2014, Mr. Walker was remanded to the Nassau County Correctional Center as a detainee awaiting trial in New York State court. (ECF No. 99-7, County Defendants' Rule 56.1 Statement, ¶ 1.) Armor and its employees were hired to provide medical care to detainees at that Nassau County Correctional Center. (ECF No. 99-4, Armor Defendants' Rule 56.1 Statement, ¶ 2.) Upon his arrival at the facility, Mr. Walker notified Armor staff that he suffered from hypertension (high blood pressure), and that he had a bullet lodged in his femur bone. (*Id.* ¶¶ 7-8; ECF No. 30, Amended Complaint ("Am. Compl."), at 1.) Mr. Walker alleges that he also told staff that he required a cane to ambulate, and was told by unnamed Armor staff that he would receive a cane. (Am. Compl. at 1.) However, about one week later, a nurse allegedly told Mr. Walker that although a cane had been ordered, the order was subsequently canceled. (*Id.*)

Due to his difficulty walking, Mr. Walker was moved to a unit on the ground floor, but he was not provided a cane at that time. (*Id.*)

Mr. Walker further alleges that on July 28, 2014, following an x-ray of his hip, he requested to see an orthopedic specialist. (*Id.* at 2.) He was not allowed to visit an orthopedic doctor until nearly three months later, on October 22, 2014. (*Id.*) The doctor prescribed a pain-relieving medication, and a cane. (*Id.*) According to Mr. Walker, he did not receive the cane until the following summer, on June 4, 2015. (*Id.*)

While detained, Mr. Walker made "over [one] hundred" complaints of "severe pain and discomfort." (*Id.*) He alleges that the majority of his complaints were met with inaction by the Armor Defendants. (*See id.*) According to Mr. Walker, he could "barely walk" due to the pain, which also prevented him from sitting, standing, or laying down without discomfort. (*Id.*) Mr. Walker requested an extra mattress to sleep on, but was told by numerous unspecified officials that "extra mattresses [were] not to be given to anyone for any reason." (*Id.*) Mr. Walker alleges that he suffered "degeneration of [his] body" and "extreme chronic pain daily" as a result of the doctors and prison officials who "deliberately denied [him] the proper medical care for various reasons," including "their own

3

lack of professional knowledge," and their "greed to save money for the county and the company they worked for." (*Id.*)

After the lawsuit was filed, both the County Defendants and the Armor Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and Judge Bianco referred those motions to Magistrate Judge Steven I. Locke, who, at the time, was assigned to the case.  On August 8, 2016, Judge Locke issued a report and recommendation, which interpreted Mr. Walker's complaint as bringing three claims: (i) a municipal liability claim against the County of Nassau and Armor; (ii) claims against former sheriff Sposato and Dr. Armas, as individuals who promulgated customs and policies on behalf of the County of Nassau and Armor, respectively; and (iii) individual claims against Dr. Margos and Dr. Sanchez for violating Mr. Walker's civil rights.  (ECF No. 27, Report and Recommendations ("R&R"), at 16–17.)  Judge Locke recommended that the County Defendants' motion to dismiss be denied, and that the Armor Defendants' motion to dismiss be granted in part and denied in part.  (*Id.* at 37.)  Specifically, Judge Locke recommended that Mr. Walker's claims against the Armor Defendants resulting from the alleged failure to provide him with a cane and failure to refer him to a specialist be

dismissed,[1] but recommended that his claims proceed with regard to his allegation that he was denied pain medication and a second mattress. (*Id.* at 37-38.)  On August 24, 2016, with leave of the court, Mr. Walker filed an amended complaint.  (ECF No. 30, Am. Compl.)  On September 22, 2016, Judge Bianco adopted Judge Locke's R&R in its entirety, over the objection of the Armor Defendants. (*See* ECF No. 32, Memorandum and Order.)

On April 5, 2019, this case was reassigned to the undersigned. (*See* Apr. 5, 2019 ECF Notice of Reassignment.) Now that discovery is complete, the County Defendants and the Armor Defendants have filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 99, Joint Motion for Summary Judgment; *see* ECF No. 99-9, Memorandum of Law ("Def. Mem."); ECF No. 99-11, Reply.)  Plaintiff opposed the motion.  (ECF No. 99-10, Memorandum in Opposition ("Pl. Opp.").)

---

[1] In his original complaint, Mr. Walker did not allege that he requested a cane. (*See* R&R at 21.)  In his amended complaint, he does allege that he made a request for a cane to an unspecified individual upon arrival at the facility.  With regard to the failure to refer Mr. Walker to a specialist, Judge Locke found that Mr. Walker failed to allege than any such refusal caused him an injury. (*Id.* at 29.)

**Legal Standard**

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

To maintain a Section 1983 claim, a plaintiff must allege two elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Second, "the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Id.; see also McCugan v. Aldana-Brnier*, 752 F.3d 224, 229 (2d Cir. 2014).

When a Section 1983 claim is contemplated "by a prisoner confined in any jail, prison, or other correctional facility," the prisoner may not file a lawsuit in federal court

"until such administrative remedies as are available [within the prison system] are exhausted."   42 U.S.C. § 1997e(a).

A party moving for summary judgment must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'"   *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."   *Anderson*, 477 U.S. at 249.   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."   *Id.* at 249-50 (internal citations omitted).

"When considering a dispositive motion made by or against a *pro se* litigant, the [c]ourt is 'mindful that a *pro se* party's pleadings must be liberally construed in favor of that party and [they] are held to less stringent standards than formal pleadings drafted by lawyers.'"   *Houston v. Teamsters Local 210*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)).   "Nonetheless, . . . a *pro se* party's bald assertions[,] unsupported by evidence, are insufficient to overcome a motion for summary judgment."   *Id.*

7

(quoting *Rodriguez v. Hahn*, 209 F.Supp.2d 344, 348 (S.D.N.Y. 2002)).

## Discussion

### I.   Exhaustion of Administrative Remedies

The County Defendants and the Armor Defendants first argue that Plaintiff's claims are barred as a matter of law because he failed to exhaust the available administrate remedies before filing suit.  (Def. Mem. at 7-10.)  The Prison Litigation Reform Act ("PLRA") "requires prisoners to exhaust prison grievance procedures before filing suit." *Jones v. Bock*, 549 U.S. 199, 202 (2007).  This requirement broadly applies to any suit "with respect to prison conditions" brought pursuant to Section 1983, or any other federal law.  *Id.* at 204.  While Mr. Walker is no longer incarcerated, he was still detained at the Nassau County Correctional Facility at the time he initiated this action.  (*See* Complaint at 11.)  Accordingly, the PLRA applies to his case.  *See Perez v. Westchester Cty. Dep't of Corr.*, 587 F.3d 143, 155 (2d Cir. 2009) ("The text of the PLRA, although not entirely unambiguous, is most naturally read as referring solely to a plaintiff's status at the time of *filing*, not at subsequent stages of the proceedings.") (emphasis in original); *see Williams v. Handmen*, No. 11-cv-6918 (LBS), 2013 WL 342702, at *3 (S.D.N.Y. Jan. 29, 2013) (the plaintiff's "relatively newfound parolee status does not change the effect

8

of PLRA's exhaustion bar on the suit he brought when still a prisoner").

Both the County Defendants and the Armor Defendants argued in their motions to dismiss that Plaintiff failed to exhaust his administrative remedies.  In the R&R that was subsequently adopted by Judge Bianco, Judge Locke rejected their argument at that stage of the litigation, because the Supreme Court has held that prisoners "are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones*, 549 U.S. at 216; (*see* R&R at 12-14).  The defendants argue that now, following discovery, "[a]ll of the facts alleged and testimony provided thus far suggest that Mr. Walker never exhausted the administrative process as it relates to his medical complaints."  (Def. Mem. at 9.)

The handbook that was provided to all detainees and inmates at the Nassau County Correctional Center included a section describing the facility's grievance process, which required any grievance to be filed in writing within five days of the "act or occurrence leading to the grievance."  (Def. Ex. G at 4.)  It further outlined an appeals process, in the event of an adverse decision, in which the complainant could appeal the denial of their grievance to the New York State Commission of Correction.  (*Id.* at 5.)  At his deposition, Mr. Walker

testified that he was aware of the facility's written grievance process.  (Def. Ex. C at 141:6-17.)

Mr. Walker filed several grievances while he was detained at the Nassau County Correctional Center.  Based on the file proffered by the County Defendants, it appears that only one of the grievances was related to medical care.  (*See* Def. Ex. E.)  That grievance was made on September 23, 2014, and the file does not reveal the specific contents of the grievance. (*Id.*)  At his deposition, Mr. Walker testified that he filed at least one grievance with respect to the denial of his cane, which he said was denied because it was found to be "too vague." (Def. Ex. C at 112:15-17.)  Mr. Walker also testified that he never filed any appeals after his grievances were denied, despite being aware of the appeals process.  (*Id.* at 139:4-142-7.)

Regardless of whether Mr. Walker properly filed grievances with respect to each of his claims, the undisputed evidence that he failed to appeal (and thus, exhaust) any grievance denials bars his lawsuit.  *See Reynoso v. Swezey*, 238 F. App'x 660, 663 (2d Cir. 2007) (summary order) ("the failure to appeal . . . was not justified" where the plaintiff "testified at his deposition that he had filed grievances in the past and was aware of the mechanism by which an appeal . . . was filed").

In response to the defendants' argument that his lawsuit is barred, Mr. Walker argues that he "filed several grievances," but he does not have the documentation to demonstrate these filings because the New York Department of Corrections and Community Supervision "lost [his] legal property bag containing all paperwork pertaining" to his case. (Pl. Opp. at 12.) Mr. Walker also points to his prisoner file, which does show the filing of several grievances (Def. Ex. E), and further argues that the grievance process was "rigged." (Pl. Opp. at 13.)

Mr. Walker's argument, however, ignores the fatal flaw in his exhaustion of available administrative remedies: there is no evidence that he completed the grievance process by appealing the denials of his grievances, and he admitted under oath that he did not appeal them. "In order to exhaust his remedies, a prisoner must pursue his grievance to the highest administrative level, including *all appellate remedies*." *Petit v. Bender*, No. 99-cv-969 (SHS), 2003 WL 22743485, at *4 (S.D.N.Y. Nov. 19, 2003) (emphasis added). Mr. Walker's unsupported contention that the grievance process was "rigged" does not alter this requirement. *See id.* at *5 ("In the Second Circuit, formal compliance with the Inmate Grievance Program is required and an inmate must exhaust his administrative remedies even if such exhaustion would be futile or ineffective."). Moreover, if the

grievance process was in fact unfair in some way, the appeals process was the first step to attempt to correct that unfairness. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'").

Because the PLRA applies to all of Mr. Walker's constitutional claims brought pursuant to Section 1983, his failure to fully exhaust the available administrative remedies requires the dismissal of all of those claims. While such a remedy may appear harsh, the law is clear. "An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (quoting 42 U.S.C. § 1997e(a)). The "mandatory" language of the PLRA "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Id.* The only exception is when an "[a]n administrative procedure is 'unavailable'"; that is, "when (1) 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;' (2) the scheme is 'so opaque that it becomes, practically speaking, incapable of use,' meaning that 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;' or (3) 'when prison

administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Hayes v. Dahlke*, 976 F.3d 259, 268 (2d Cir. 2020) (quoting *Ross*, 136 S. Ct. at 1859–60).  Mr. Walker has made no showing that the appeals process was "unavailable."  To the contrary, he admitted that he was aware of the appeals process, but he chose not to utilize it.

Because Mr. Walker was detained when he filed his lawsuit, he was required to meet the requirements of the PLRA, including the exhaustion requirement.  Based on the record before the court, including Mr. Walker's admission under oath that he did not appeal the denials of any of the grievances he filed, there is no dispute of fact that Mr. Walker did not fully exhaust the administrative remedies that were available before filing suit.  His Section 1983 claims are therefore barred by the PLRA, and the defendants' motions for summary judgment are granted on all of Plaintiff's Section 1983 claims.

## II.  Merits of Plaintiff's Constitutional Claims

Even if Plaintiff had fully exhausted his claims, the court finds that summary judgment against him would be warranted, because the undisputed evidence demonstrates that none of the defendants violated his constitutional rights. Following Judge Locke's report and recommendation regarding the motions to dismiss, which Judge Bianco adopted in full, the

claims remaining in the case were Mr. Walker's claim that the County Defendants had an unconstitutional custom or policy which prevented him from receiving a second mattress to sleep on, and that the Armor Defendants were deliberately indifferent to his serious medical needs.  Mr. Walker also amended his complaint to allege that he requested a cane upon his arrival at the Nassau County Correctional Facility, which revived his claim regarding the cane, despite Judge Locke's initial recommendation that it be dismissed.

### A. Custom or Policy

The two County Defendants named in this lawsuit are the County of Nassau itself, and former sheriff Sposato.  Mr. Walker testified that Mr. Sposato had no direct involvement in any of the incidents giving rise to his claims: Mr. Walker never sent any complaints to Mr. Sposato, or had any other communication with him.  (Def. Ex. C at 126:6-18); *see Farrell v. Burke, 449 F.3d 470*, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983.").  Accordingly, because the County Defendants were not directly involved in Mr. Walker's medical care, and Mr. Walker does not allege a specific County policy that prevented him from receiving a cane, the only possible claim against the County Defendants is that the County

violated Mr. Walker's civil rights through the policy that he alleges prevented him from obtaining a second mattress to sleep on. *See Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 441 (S.D.N.Y. 2016) ("Municipal liability in a [Section] 1983 action may not be based on a theory of *respondeat superior* or vicarious liability.").

The undisputed evidence before the court reveals the absence of any unconstitutional policy.  The County Defendants concede that detainees and inmates were generally only provided one mattress; however, an inmate could request a second mattress for medical reasons.  (*See* Reply at 6.)  Mr. Walker testified that, "if there was ever a policy," correctional officers nonetheless gave another inmate "what he asked for and what he needed."  (Ex. C at 129:22-130:2.)  Mr. Walker further testified that "there was an unwritten policy because for some reason some people got certain things[,] and for some reason some people didn't get certain things."  (*Id.* at 131:1-5.)  When asked why he thought that was the case, Mr. Walker speculated that the inmates who received what they asked for more often were the ones with family members who lived near the facility and visited often.  (*Id.* at 132:13-19.)

Therefore, what Mr. Walker's own testimony shows is that he was unhappy that certain other inmates appeared to have unspecified requests fulfilled, while his request for a second

mattress went unfulfilled.  That, however, does not constitute an unconstitutional custom or policy for purposes of municipal liability pursuant to Section 1983.  In order for Mr. Walker to defeat summary judgment on a claim for an unconstitutional custom or policy, he would have to show a disputed issue of fact as to a widespread practice that violated detainees' rights. *See Patterson v. Cty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) ("It is sufficient to show, for example, that a discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law.'") (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992)).  Mr. Walker's testimony shows that there was not such a widespread practice, because some inmates "got certain things."  (Def. Ex. C at 131:1-5.)  His proffered reason for why some inmates "got certain things," which was that they were often visited by their family members, is too vague and speculative to implicate any rights guaranteed by the Constitution.

Mr. Walker's testimony, and his opposition to the motion for summary judgment, fail to raise a triable issue regarding whether there was an unconstitutional custom or policy in place.  Accordingly, Mr. Walker's only possible claim against the County Defendants fails as a matter of law.

## B. Deliberate Indifference

Mr. Walker also claims that the Armor Defendants, who were hired by the County Defendants to provide medical care at the Nassau County Correctional Center, were deliberately indifferent to his serious medical needs.  Mr. Walker invokes both the Eighth and Fourteenth Amendments to the Constitution. However, "claims by pretrial detainees . . . are properly brought under the Fourteenth Amendment" (whereas "the Eighth Amendment applies only to convicted prisoners").  *Simpson*, 159 F. Supp. 3d at 443.  In any event, the substantive analysis of a deliberate indifference claim is the same, regardless of whether it is brought under the Eighth Amendment or the Fourteenth Amendment.  *Id.*

"As to [a] deliberate indifference to serious medical needs claim, [a] plaintiff must demonstrate that there is a genuine issue of material fact as to (a) an objective component," that the plaintiff had a "'sufficiently serious'" medical condition, "and (b) a subjective component—that the defendant possessed a 'sufficiently culpable state of mind.'" *Elliott v. Cty. of Monroe*, 115 F. App'x 497, 498–99 (2d Cir. 2004) (summary order) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994)).

Again, Mr. Walker's own testimony demonstrates that none of the Armor Defendants engaged in conduct that amounted to

17

deliberate indifference to a serious medical need.  The three named individual defendants employed by Armor are: Dr. Armas, Dr. Margos, and Dr. Sanchez.  Mr. Walker admitted that he was never treated by Dr. Armas (Mr. Walker had never even met Dr. Armas).  (Def. Ex. C at 50:12–18.)  Because Dr. Armas did not treat Mr. Walker, Dr. Armas could not have been deliberately indifferent to his medical needs.

Regarding Dr. Margos and Dr. Sanchez, both of whom apparently treated Mr. Walker on several occasions while he was detained, Mr. Walker's deposition testimony absolved them of the necessary state of mind.  "[T]he subjective element of deliberate indifference 'entails something more than mere negligence' . . . . ."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  "'[M]ere medical malpractice' is not tantamount to deliberate indifference."  *Id.*  To rise to the level of deliberate indifference, the alleged medical malpractice must, for example, "involve[] culpable recklessness, *i.e.*, an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm[.]'"  *Id.*

Mr. Walker has failed to establish that there is a genuine issue of material fact that either Dr. Margos or Dr. Sanchez committed malpractice rising to the level of culpable recklessness.  Mr. Walker testified that his claim against Dr.

18

Margos was largely based on his belief that she was "the medical director," and that "she could've done a whole lot more if she really wanted to." (Def. Ex. C at 63:21-25.) Mr. Walker testified that he asked Dr. Margos for an extra mattress, and for a cortisone shot, but she declined to provide either, and instead offered him only Tylenol and ibuprofen. (*Id.* at 64:3-14.) Mr. Walker also testified that he complained to Dr. Margos about the delay in receiving a cane, but his testimony is also clear that Dr. Margos never denied his request for a cane. (*Id.* at 53:14-19.) Mr. Walker's testimony thus demonstrates that Dr. Margos was not deliberately indifferent to his medical needs. Rather, Dr. Margos offered Mr. Walker treatment, and Mr. Walker's contention appears to only be that he wanted additional or more aggressive treatment. "An inmate does not have the right to treatment of his choice." *Wright v. Genovese*, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010), a*ff'd*, 415 F. App'x 313 (2d Cir. 2011) (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986)). "The fact that [a] plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation." *Id.* Here, Mr. Walker's own testimony demonstrates that Dr. Margos offered him treatment that she felt would alleviate his pain, and thus his claim that she was deliberately indifferent fails.

Likewise, Mr. Walker's testimony regarding his treatment by Dr. Sanchez does not demonstrate that Dr. Sanchez was reckless.  Mr. Walker testified that Dr. Sanchez "was just following his protocol."  (Def. Ex. C at 73:9-10.)  Mr. Walker further testified that, although Dr. Sanchez did not prescribe a second mattress, he did provide Mr. Walker with an extra blanket to fold up and put under his hip when he slept.  (*Id.* at 63:8-17.)  And, as he testified with regard to Dr. Margos, Mr. Walker also testified that Dr. Sanchez never denied his request for a cane.  (*Id.* at 53:14-23.)  Again, this testimony confirms that Mr. Walker may have disagreed with the treatment provided by Dr. Sanchez, but the court has been presented with no evidence suggesting that Dr. Sanchez was deliberately indifferent to Mr. Walker's medical condition.

The court has no cause to doubt Mr. Walker's contention that his underlying condition resulted in extreme pain while he was detained.  "[H]owever, it is the particular risk of harm faced by the Plaintiff due to a challenged deprivation of care, rather than the severity of [his] underlying medical condition, considered in the abstract, that is relevant" for a claim of deliberate indifference.  *Cain v. Jackson*, No. 05-cv-3914 (LAP), 2007 WL 2193997, at *6 (S.D.N.Y. July 27, 2007).  Here, Mr. Walker's own testimony concedes that the two doctors named as defendants who treated him attempted to

20

alleviate his pain by providing medication and a blanket to place under his hip when he slept.  "The pain and discomfort that Plaintiff alleges as a result of the delay in . . . receiving [additional] medical care and prescription medications, . . . while not minimized by this [c]ourt, is simply insufficient to implicate" the Constitution.  *Id.*

Accordingly, even if Mr. Walker's claims of deliberate indifference were not procedurally barred, the court would and does grant the defendants' motions for summary judgment on the merits.

### III. Plaintiff's Remaining Claims and Requests for Relief

In addition to his constitutional claims, Mr. Walker's operative complaint references possible state law claims, including negligence by the Armor Defendants.  (*See* Am. Compl. at 3.)  The Second Circuit and the Supreme Court have held that in the usual case, "when the federal claims are dismissed[,] the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).  Accordingly, the court has dismissed Mr. Walker's Section 1983 claims for both procedural reasons and on the merits, and it will exercise its discretion to dismiss any state law claims he could have asserted as well.

Finally, Mr. Walker seeks "injunctive relief . . . restraining the allegedly unlawful policies and practices [from] continu[ing]." (Am. Compl. at 3.) "[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Mr. Walker was transferred from the Nassau County Correctional Center in June 2016. (*See* ECF No. 24, Notice of Change of Address.) As of 2020, he was no longer detained or incarcerated at any facility. (*See* ECF No. 10, Notice of Change of Address.) Accordingly, the court denies as moot Mr. Walker's request for injunctive relief.

## Conclusion

For the foregoing reasons, the defendants' joint motions for summary judgment are GRANTED, and Mr. Walker's claims are dismissed in their entirety. The Clerk of Court is directed to enter judgment in favor of the defendants, to serve a copy of this Memorandum and Order and the judgment on Mr. Walker at his address of record, to note the service by mailing on the docket, and to close this case. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith, and

therefore *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

Dated:     Brooklyn, New York
           February 2, 2021

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge